UNITED STATES of America, Plaintiff-Appellee,

v.

Gary Douglas JENSEN, Defendant-Appellant.

No. 82–8136
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Oct. 25, 1982.

**1362**

Paul S. Weiner, Jonesboro, Ga., for defendant-appellant.

Craig A. Gillen, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, JOHNSON and HATCHETT, Circuit Judges.

PER CURIAM:

Drug Enforcement Agency Agent Paul Markonni saw Gary Douglas Jensen leaving a flight from Miami, Florida, and entering the airline terminal at Atlanta, Georgia.[1] Markonni and another agent, after making inquiries concerning Jensen's ticket and itinerary, approached Jensen who was sitting at a departure gate awaiting the continuation of his flight to Phoenix, Arizona. Markonni sat down next to Jensen, displayed his credentials, identified himself as a law enforcement officer, and asked if he

could talk with him. Jensen agreed. On request Jensen handed Markonni his ticket and driver's license. Markonni returned the ticket and license, then said, "Mr. Jensen, we're narcotics officers, and we're looking for drugs and narcotics at the airport. Are you carrying any drugs or narcotics either on your person or in your luggage?" Jensen replied that he was not. Markonni asked whether Jensen would consent to a search of his person and suitcase. Jensen responded by requesting that they go somewhere else to talk. Markonni agreed. While the men were walking down a concourse Markonni asked Jensen what he wanted to talk about. Jensen replied, "You know." Markonni then stated that "I take it from that that you mean that you are carrying something in the way of drugs and narcotics." Jensen replied that "[y]ou already know." Markonni took Jensen to an airline office, read him his *Miranda* rights, and told him that he could refuse to consent to a search. Jensen gave written consent to a search. Cocaine was discovered in his luggage.

The district court denied Jensen's motion to suppress the evidence seized in the search of his luggage. After Jensen waived a jury trial, the court found him guilty of possession of cocaine with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1). Jensen appeals.

Jensen presents two major arguments. He first asserts that Markonni's action in initially stopping him was arbitrary and capricious and therefore should be invalidated. We decline to rule the stop illegal. First, Markonni did perceive certain characteristics concerning Jensen that guided his decision in stopping him and prevented the stop from being arbitrary and capricious. At the time he stopped Jensen, Markonni knew that Jensen was travelling from a drug center, had an unusual itinerary involving a flight from Phoenix, Arizona, to Miami, Florida, one

---

**1.** We recite the facts in the light most favorable to the government. *See, e.g., United States v.* *Berry,* 670 F.2d 583, 588 n.2 (5th Cir. 1982) (Unit B en banc).

evening and a return the next morning, and had paid for his ticket in cash. Those characteristics are part of a drug courier profile for detecting possible drug smugglers. *See United States v. Berry,* 670 F.2d 583, 588 (5th Cir. 1982) (Unit B en banc). The Court in *Berry* did rule that the profile was of no relevance in determining whether there existed reasonable suspicion justifying a limited seizure of an individual.[2] Here, however, as Jensen concedes, he was not seized when Markonni initially approached him. In such circumstances the *Berry* Court "recognize[d] the administrative utility of the drug courier profile in guiding law enforcement officials toward individuals on whom the officers should focus attention in order to determine whether there is a basis for a specific and articulable suspicion that the particular individual is smuggling drugs." *Id.* at 600 n.21. More broadly, we note that in *Berry* the former Fifth Circuit emphasized the importance of permitting voluntary interaction between police and citizens and concluded that such communication did not bring the Fourth Amendment into play. *Id.* at 590–91. Turning to consideration of whether airport stops fell within the scope of such voluntary communication, the *Berry* Court ruled that they did in instances that were completely non-coercive and extremely limited in nature. *Id.* at 594–95. Absent any Fourth Amendment concerns, police need not point to some degree of suspicion that would justify such stops. Jensen, as noted above, explicitly concedes that his initial encounter with Markonni did not bring the Fourth Amendment into play. Markonni's stop and interrogation of him were entirely proper.

Jensen also asserts that he was seized in violation of the Fourth Amendment when he was asked to consent to a search of his luggage. *Berry* resolved the standard for determining whether a seizure has occurred: there has been a seizure "if 'in view of all the circumstances surrounding the incident, a reasonable person would believe that he was not free to leave.'" *Id.* at 595 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed. 497 (1980) (plurality opinion by Stewart, J.)). Jensen's argument is that, after being asked for documents and identification, being told that the person questioning him was a narcotics agent, being asked whether he was carrying drugs, and being asked to consent to a search, no person would have felt free to leave. We disagree. Markonni said and did nothing that would indicate to a reasonable individual that he was not free to leave. In *Berry* the Court, as Jensen notes, did express concern about statements by law enforcement officials that an individual was suspected of carrying drugs. 670 F.2d at 597. Here, however, Markonni's request for identification, identification of himself, and question concerning whether Jensen was carrying drugs indicated no more than an interrogation as part of a more general inquiry into drug smuggling. Markonni never accused Jensen of carrying drugs and never even stated that he suspected Jensen of carrying drugs. The statements would not have indicated to a reasonable person that he had become the specific focus of an investigation or that failure to cooperate would lead only to formal detention.[3] Nor do we believe, as Jensen charges, that a reasonable

**2.** In *Berry* the Court articulated three tiers of police-citizen encounters: "communication between police and citizens involving no coercion or detention and therefore without the scope of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause." 670 F.2d at 591. As noted in text, Jensen concedes that his initial encounter with Markonni did not invoke the Fourth Amendment. He also admits that, after he told Markonni that Markonni already knew why he

wanted to go somewhere to talk, probable cause existed for his detention.

**3.** We note that under the *Berry* standard a court should consider whether *the person stopped* reasonably would have felt that he was the focus of an investigation and that he was not free to leave. The intent of law enforcement officials making a stop to focus their investigation on the specific individual stopped is relevant only insofar as the individual perceives that intent.

**1364**

person in his place, after Markonni had asked for consent to a search following Jensen's denial that he was smuggling drugs, would have believed that Markonni thought he was lying and so would not have felt free to leave. Markonni never intimated that he thought Jensen was lying. His request would merely have appeared to a reasonable person to have been an attempt to obtain confirmation of denials of drug-smuggling activity, not an accusation that the denials were lies, and hardly would have indicated that that person no longer was free to leave if he wished. No seizure occurred on the facts at issue.[4]

The judgment of the district court is AFFIRMED.

---

4. Given our holding we need not reach Jensen's assertions that no reasonable suspicion for a seizure existed or that his later consent to a search did not vitiate the taint of any Fourth Amendment violation.