**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Pierluigi MANCINI,
Defendant-Appellant.**

No. 85-8838.

United States Court of Appeals,
Eleventh Circuit.

Oct. 20, 1986.

---

Before JOHNSON and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Following the denial of his motion to suppress evidence, appellant Pierluigi Mancini pled guilty to possession of cocaine with intent to distribute. Mancini conditioned his plea by preserving the right to appeal from the denial of the motion to suppress. We affirm the judgment of the district court.

## I. FACTS

On April 23, 1985, Mancini arrived at the Atlanta, Georgia airport on a flight from Miami, Florida. Agent Lynn Collier, working with the Drug Enforcement Administration ("DEA"), observed Mancini deplane and heard him ask the gate agent for directions to continue his flight to Pittsburgh, Pennsylvania. Agent Collier noted that Mancini had no baggage checks attached to his airline ticket and that the two pieces of hand luggage which he carried were nearly empty.

Because she had overheard which flight Mancini was connecting with, Agent Collier did not maintain surveillance of the defendant but subsequently relocated him in the gate area next to the departure gate for his flight to Pittsburgh. Mancini was nervously looking around the gate area. After a while, Mancini left his seat and went to the public restroom, where Agent Bruce Pickett, who was also working with the DEA, followed him. Although it was not crowded, Mancini walked into the restroom, looked around, and came right back out, not using the facilities. Mancini then went into a bar near the restroom, sat down, and ordered a drink. He looked over his shoulder several times.

At this point, approximately 9:30 a.m., Agent Collier and Agent Pickett approached Mancini in the bar. Both agents

Mary S. Donovan, Atlanta, Ga., for defendant-appellant.

William L. McKinnon, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

were dressed in civilian clothes and displayed neither weapons nor badges. After identifying themselves to Mancini and showing him their identification, the agents asked whether they could examine his airline ticket. Mancini agreed and handed the ticket to Agent Collier. Agent Collier determined that Mancini was traveling from Miami and had no checked baggage. She noted that the ticket was in the name of Joseph George. Agent Collier handed the ticket back to Mancini and, referring to him as "Mr. George," asked him whether he had any additional identification. Mancini stated that he was traveling for Mr. George and produced a temporary Florida driver's license in his own name and an employment identification card with his name and photograph on it. Agent Collier examined these items and then returned them to the defendant.

When the police officers first identified themselves, Mancini appeared nervous. As he handed over his ticket, his hands were visibly shaking. As the interview continued, his breathing became affected and he became extremely nervous. During the whole interview, however, the agents maintained a conversational tone of voice.

Agent Collier explained to Mancini that she and Pickett were narcotics officers looking for drugs moving through the airport. She asked Mancini whether he would allow them to search his person and the bags he had with him. Mancini responded, "What happens if I do have drugs?" Agent Collier told Mancini that she was unable to determine the answer to that question and asked him if he would allow the search to be conducted in the bar or in an airline office across the hall. Mancini picked up his bags, paid his bar bill, and followed the agents to the airline office. At no time during the walk from the bar to the airline office did either agent (or a third plainclothed agent in the corridor) touch the defendant. In the airline office, Agent Collier advised Mancini of his right to refuse to permit a search of his person or luggage. Mancini indicated that he did not want his bags searched, but did not object to a "pat-down" search of his person.

Agent Pickett searched Mancini and found nothing. Agent Collier told Mancini that he was free to leave, but that she was going to seize his luggage and have it subjected to a "drug dog sniff." She told him that she would obtain a search warrant for the luggage if the drug dog indicated the presence of drugs in Mancini's luggage. Collier requested that Mancini give her an address in Pittsburgh to deliver the luggage, but Mancini replied that he would return to Miami rather than go on to Pittsburgh if his bags were being seized. He furnished Collier with an address in Miami where his bags could be returned. Mancini then left the airline office.

Agent Collier took the hand luggage to the DEA office and requested a U.S. Customs agent to bring a drug detector dog. Mancini's two bags were placed in a line with five other pieces of luggage. The Customs dog positively alerted to the presence of drugs in the baggage of Mancini. This alert occurred fifteen minutes after the seizure of the bags from the defendant. Agent Collier then obtained a search warrant for the bags and seized approximately half a pound of cocaine from the defendant's bags. Mancini was arrested before he left the Atlanta airport. The cocaine seized as a result of the search conducted pursuant to the search warrant was the focus of the motion to suppress which is the subject of the instant appeal.

Mancini challenges the denial of his motion to suppress on several grounds: (1) that his detention in the airport bar constituted a seizure which was not based on reasonable suspicion; (2) that the agents effectively placed him under arrest in the bar and forced him to accompany them to the airline office without probable cause; (3) that his carry-on luggage was subject to an unreasonable seizure; and (4) that the search of his luggage was conducted without probable cause.

## II.  DISCUSSION

The en banc court has prescribed specific rules for airport stops. *United States v.*

*Berry,* 670 F.2d 583 (5th Cir.Unit B 1982) (en banc).[1] In *Berry,* the court described three levels of police-citizen encounters: "communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause." *Berry,* 670 F.2d at 591. *Accord United States v. Puglisi,* 723 F.2d 779, 783 (11th Cir.1984); *United States v. Jensen,* 689 F.2d 1361, 1363 n. 2 (11th Cir.1982); *United States v. Elsoffer,* 671 F.2d 1294, 1297 (11th Cir. 1982). A seizure has occurred "if 'in view of all the circumstances surrounding the incident, a reasonable person would believe that he was not free to leave.'" *Berry,* 670 F.2d at 595 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (plurality opinion)).

■ The factors which the Supreme Court in *Mendenhall* identified as demonstrating a lack of coercion are also present in this case—the interview took place in a public area; the officers wore no uniforms and displayed no weapons; the agents did not summon Mancini to them, but instead approached him and identified themselves; and the agents requested, but did not demand, to see Mancini's ticket and identification. *See Mendenhall,* 446 U.S. at 555, 100 S.Ct. at 1877. Moreover, the interview between the agents and Mancini in the bar contained none of the indicia of a seizure identified in *Berry* or any other indicia of a seizure. *See Berry,* 670 F.2d at 597. The agents did not retain Mancini's ticket or identification; they returned each promptly. They did not block Mancini's path or otherwise intercept him. The agents maintained a conversational tone of voice. Collier never accused Mancini of carrying

drugs and did not state that she suspected Mancini of possessing drugs.

The agents' conduct did not involve coercion or detention—under the totality of the circumstances, a reasonable person would have known that he was free to leave or terminate questioning. Thus, the questioning of Mancini in the bar did not constitute a seizure.

■ The encounter between Mancini and the DEA continued to be of the first type described in *Berry* at least through the time that Agent Collier requested that Mancini consent to a search of his person and luggage. The case of *United States v. Jensen,* 689 F.2d 1361 (11th Cir.1982), is directly on point. The court found that there had not been a seizure when DEA officers asked a passenger whether he would consent to a search of his person and luggage after an interview which proceeded in a manner very similar to Mancini's. *See Jensen,* 689 F.2d at 1363–64.

■ Immediately after Agent Collier asked Mancini whether he would consent to a search of his person and luggage, Mancini asked, "What happens if I do have drugs?" As discussed below, Agent Collier could reasonably infer from that statement that Mancini was carrying drugs, and as of that time Agent Collier had probable cause. Thus Agent Collier had probable cause before there was even a seizure of Mancini.

■ We consider the last three issues together. Because we hold that the agents had probable cause to arrest Mancini in the bar, we need not separately consider whether or not his accompanying them to the airline office constituted an arrest, whether they had reasonable suspicion to detain his luggage, or whether they had probable cause to search his luggage since probable cause would justify an arrest and a search of the luggage.[2] "[T]he Constitu-

---

1. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)

(adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

2. "[T]he fact that the officers ... proceeded on a consensual or *Terry*-stop rationale would not

tion permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979) (citations omitted). " '[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 37, 99 S.Ct. at 2632 (citations omitted). The record includes the following factors which, considered together, constitute probable cause for arrest: Mancini was coming from a source city, Miami; he had no checked luggage and his hand luggage was apparently empty; he had purchased his ticket in cash; he was traveling under a false name and had only a temporary driver's license; he was acting strangely when observed in the gate area and in the men's room; he was visibly nervous in the bar—his hands were shaking and he was hyperventilating; and, in response to Agent Collier's request that he consent to a search of his person and carry-on luggage, Mancini made a statement from which Agent Collier could reasonably infer that he was carrying some drugs. Thus, the circumstances of Mancini's travel, his extreme nervousness during the interview, and, most importantly, his implicit admission that he was carrying a controlled substance, provided the agents probable cause to believe that the Mancini was carrying illegal narcotics.

In conclusion, assuming *arguendo*, but expressly not deciding, that Mancini did not consent to accompany the agents to the airline office but that he was then under arrest, the agents had probable cause to arrest Mancini, and to detain his luggage in order to obtain the search warrant. It follows necessarily that there was probable cause to support the issuance of the search warrant.

foreclose the [government] from justifying ... custody by proving probable cause." *Florida v. Royer*, 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75

### III. CONCLUSION

The judgment of the district court is AFFIRMED.

L.Ed.2d 229 (1983) (plurality opinion) (citations omitted).