**UNITED STATES of America**

**v.**

**William David RICCIO.**

**No. CR 84–AR–104–NE.**

United States District Court,
N.D. Alabama.

Nov. 21, 1986.

Jerry Quick, Trussville, Ala., for Riccio.

**MEMORANDUM OPINION**

ACKER, District Judge.

Because William David Riccio is in federal custody as a result of his conviction for a crime unrelated to the charges contained in this indictment, his renewed motion to suppress his two depositions taken on February 17, 1983, and March 15, 1983, in CV–80–HM–1449–S (the civil action brought in this court by Morris Dees on behalf of the Southern Christian Leadership Conference)

was heard separately. There are four grounds asserted by Riccio for suppressing these depositions:

1. That evidence first appearing after *United States v. Handley*, 763 F.2d 1401 (11th Cir.1985), now reflects that Mr. Dees' "sole purpose" in CV–80–HM–1449–S was to engage in discovery for mounting a prospective federal criminal prosecution.

2. That evidence first appearing after *United States v. Handley* proves that the United States was already "in bed" with Mr. Dees at the time Riccio was deposed in 1983.

3. That the introductory written stipulations entered into by Riccio and contained in each of his depositions preserved until now Riccio's right to assert his Fifth Amendment privilege against self-incrimination, a privilege which he now asserts.

4. That his civil depositions were compelled and that his answers were given without a knowing and voluntary waiver of his constitutional privilege against self-incrimination.

The first three grounds have already been thoroughly discussed and analyzed in previous Memorandum Opinions which have led to orders suppressing certain depositions and testimony given by other defendants. These suppression orders are now on appeal. These prior opinions need not be repeated. Insofar as they are applicable to Riccio's civil depositions, they are incorporated in this Opinion.

As to the fourth ground in which Riccio asserts that he was acting under compulsion in 1983 and did not knowingly waive his Fifth Amendment privilege, the court finds that both civil depositions were the direct result of coercion jointly exerted by Mr. Dees and by the then existing court order in CV–80–HM–1449–S. Although the facts which lead the court to this conclusion have been set forth previously, all prior opinions which found that self-incriminatory statements were involuntary were written by this court before it became aware of *United States v. Mancini*, 802 F.2d 1326 (11th Cir.1986). In this new

opinion, the Eleventh Circuit discusses certain factors which should be considered in determining whether or not the kind of coercion exists which impermissibly overrides a constitutional privilege. One such factor there discussed and which militates against a finding of coercion is that "the officers wore no uniforms." 802 F.2d at 1329. In Riccio's case, a very prominent uniform was looming in the background, namely, the black robe worn by a federal judge. Another factor in *Mancini* militating against a finding of coercion is that "the agents did not summon Mancini to them." 802 F.2d at 1329. In Riccio's situation, he and the other civil deponents (here criminal defendants), were formally summoned by court process, backed by a compulsion order to appear for deposition. There was no gentle persuasion here. A third factor in *Mancini* is that the "agents maintained a conversational tone of voice." 802 F.2d at 1329. Although this court cannot ascertain from the cold depositions themselves precisely Mr. Dees' tone of voice, the intimidating references by Mr. Dees to Judge Haltom's order of compulsion make *"how* it was said" less important than *"what* was said." Riccio had been released from prison on January 21, 1983, and was on parole, making him all the more vulnerable to a federal court order compelling him to testify.

The following occurred during Riccio's first deposition on February 17, 1983:

DEES: All right. I show you photograph number 247 and ask you to look at this photograph and see if you can identify yourself in that photograph?

WILLINGHAM: The answer would be the same for this, that we would plead the 5th Amendment.

DEES: I show you photograph number 64 and ask you if you can identify yourself in that photograph?

WILLINGHAM: It would be the same answer.

DEES: Okay. I would like to go on record to show that Judge Haltom has issued an order of the Court directing the deponents in this case to answer ques-

tions of: A, identify themselves in any photographs taken at klan activities and B, identify other people in the same photographs taken at klan activities, whether they are not in those photographs and that counsel for the defendants, including Mr. Riccio at this time, raise the 1st and 5th Amendment grounds by filing an opposition to the Motion to Compel Answers to these questions and then subsequent to that the Judge issued an order and I would like for the record to reflect that we intend to take this matter to the Court and will request payment of immediate attorney's fees and costs for presenting this matter to the Court and in our opinion it is an obstinate failure to follow the Court Order that has been clearly handed down. And I assume Mr. Riccio is aware of the Court Order.

WILLINGHAM: I'm not sure. Off the record.

(OFF–THE–RECORD DISCUSSION)

WILLINGHAM: We have reviewed the Judge's Order and we will answer the questions. At a point though I understand from the Judge's Order that he is not saying though that any and every question you ask would be excluded from the 5th Amendment so at a point where you ask any questions that would be invasive of his privilege he would have that right but at this point in talking about the pictures we would at least answer those questions.

DEES: All right. Now, are you presently a member of any Ku Klux Klan organization?

(WHEREUPON, at this time the deponent confers with Mr. Willingham.)

DEES: Well, let's go back to the three photographs I showed you. I show you photograph number 64 first and ask you to look at that photograph and see if you can identify yourself in that photograph.

WILLINGHAM: Of course, I object to the photograph itself. There is no prejudice.

DEES: Can you identify yourself in that photograph?

RICCIO: It looks like it may be me there.

DEES: Now, you are pointing to the person on the right side of the photograph with the robe with three stripes on it, right?

RICCIO: Yes, sir.

The deponents, then civil defendants, including Riccio, comprehended the threatening significance of what was being said to them by Mr. Dees. Riccio was less naive than some of his co-defendants. He was generally familiar with the concept contained in the Fifth Amendment and attempted to assert it in 1983. However, he did not fully comprehend the potential significance of the Fifth Amendment as it might bear on his exposure to federal criminal liability when the federal investigation of the Decatur incident had been closed publicly upon a finding of no criminal responsibility by the Klan.

The *Mancini* factors, together with what has already been discussed, lead to a conclusion opposite from the conclusion which the Eleventh Circuit reached on *Mancini's* facts:

> ... under the totality of the circumstances, a reasonable person would have known he was free to leave or to terminate questioning.

802 F.2d at 1329.

In Riccio's case, the totality of circumstances leads the court to conclude that no reasonable person while being deposed as Riccio was being deposed could have thought that "he was free to leave or to terminate questioning."

While in *Mancini* the Eleventh Circuit does not cite *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937), *Mancini* inferentially adopts the *Zerbst* reasoning. In *Zerbst,* a seminal case in which now Judge Tuttle successfully represented the petitioner, the Supreme Court dealt with the factors which must be present in order to constitute an effective waiver of a constitutional right. The Supreme Court said:

> It has been pointed out that 'courts indulge every reasonable presumption

against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right ... must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. 304 U.S. at 464, 58 S.Ct. at 1023. (footnotes omitted).

Applying the *Zerbst* and *Mancini* rationale, including presumptions as well as the overall background, experience and conduct of the accused, this court finds that Riccio did not voluntarily waive his Fifth Amendment rights in 1983 and that his deposition testimony in both of these 1983 depositions was in violation of his privilege against self-incrimination.

For these reasons, Riccio's two depositions in CV–80–HM–1449–S will be suppressed.