STATE of Tennessee, Appellant,

v.

Eddie Michael MOORE, Appellee.

Supreme Court of Tennessee,
at Jackson.

July 24, 1989.

Rehearing Denied Sept. 5, 1989.

Charles W. Burson, Atty. Gen. & Reporter, Norma Crippen Ballard, Asst. Atty. Gen., Nashville, for appellant.

D.D. Maddox, Maddox & Maddox, Huntingdon, for appellee.

OPINION

HARBISON, Justice.

Appellee appealed his conviction on two counts of possession of controlled substances and one count of possessing a firearm. The Court of Criminal Appeals reversed the conviction and dismissed the charges, holding that the trial judge had erred when he overruled appellee's pre-trial motion to suppress the evidence. The Court of Criminal Appeals pretermitted other issues raised by appellee pertaining to the trial. We granted the State's application for permission to appeal. After careful consideration of the record, we are of the opinion that the trial judge correctly overruled the motion to suppress. Accordingly we reverse the judgment of the Court of Criminal Appeals and remand the case to that court for consideration of the pretermitted issues.

A. *The Facts*

The sheriff of Weakley County, Mike Wilson, was driving a patrol car shortly after noon on December 6, 1985. He was accompanied by Investigator Ron Powers. They had been investigating a burglary unrelated to the present case. They were driving south on a two-lane bypass near the City of Martin when they observed a car bearing Kentucky license plates parked on an unpaved road which intersected the bypass from their left. Because of reflection of the sunlight on the back window of the parked vehicle, they could not determine whether anyone was inside. The sheriff stopped behind the parked vehicle, and Powers got out to investigate. The sheriff radioed to request a check of the license plate registration. At first he thought that the vehicle might be abandoned, and he

considered that it was unusual to see such a vehicle parked on what he described as a deserted gravel road.

When the officers approached the vehicle they found appellee, Eddie Michael Moore, sitting inside alone. He told the officers that he had received a telephone message to meet one Leslie Hill in this location. Both Moore and Hill were known by the officers to have been involved in illicit drug transactions. Moore appeared to be normal in all respects, and the officers did not at that time detain him in any way. Instead they drove their vehicle further on the unpaved road in the same direction in which they had been proceeding. They turned around at a point about one-quarter mile past the appellee's vehicle and drove back to the paved bypass. Appellee was still parked in the same place when the officers returned to the bypass.

The suspicion of the officers was aroused by the circumstances. They knew that Moore and Hill were business partners and that Moore was renting a mobile home from Hill at a different location. They decided to keep the Moore vehicle under surveillance. Accordingly they drove on the bypass a short distance, turned around and then parked at a point opposite the entrance to the road on which appellee was parked. From this point they could observe his automobile, and after a short time they saw him turn his vehicle around, return to the bypass and proceed to the north thereon. They trailed appellee at a distance of from one-quarter mile to one mile. A tractor-trailer unit was between the two vehicles.

The officers observed another automobile coming toward them, or south, on the bypass. Powers recognized the driver of this vehicle as Leslie Hill. The Hill vehicle made a U-turn in the highway and began to proceed north, following the tractor-trailer unit which was behind the vehicle being driven by Moore. The officers followed at some distance. After a short while they observed that Moore and Hill had pulled their respective vehicles off onto the right-hand shoulder of the road where they were stopped. The officers pulled their vehicle to a stop behind the Hill car. They exited and approached the two men.

The only testimony as to what occurred was that of the sheriff and Powers, both of whom said that they told appellee and Hill that the officers suspected that a drug transaction might have occurred and requested permission to search the two vehicles. Both officers testified that permission was given.

The sheriff searched Hill's vehicle and found nothing therein, but Hill did hand him an empty vial which was later found to contain a powdery residue identified as cocaine. Inside the Moore vehicle, under the front seat, Powers found a can containing packages of white powder later identified to be controlled substances. Inside the locked glove compartment, which Powers opened, was found a loaded revolver. Moore was carrying nearly seven thousand dollars in cash on his person. Upon discovery of the contraband and the revolver, the officers arrested both Moore and Hill.

### B. *Our Conclusions*

It is important in this case, as in all others, to note that our decision is limited to the facts contained in the record. Those facts were very briefly developed. The appellee himself did not testify or call any witnesses. The only testimony at the suppression hearing was that of the sheriff and his investigator, both of whom testified that consent was freely given by appellee to the search of the vehicle which he was driving. The search produced the incriminating evidence which led to the convictions. There was no countervailing testimony. There was not any impeachment of the witnesses or any reflection upon or challenge to their credibility. The thrust of the motion to suppress was that the sheriff and his investigator did not have probable cause to arrest the accused prior to the search, nor did they have sufficient articulable facts or information to justify the stop and seizure of appellee prior to the search.

Appellee was driving a borrowed car on the date of the search, December 6, 1985. At trial he offered a witness who testified

that appellee had had possession of the car for only one day. Another defense witness at trial testified that appellee's own personal vehicle was in a repair shop operated by the witness on the date in question. Appellee did not testify at the trial, but throughout the pre-trial motions and the trial itself it was his insistence that any contraband in the vehicle which he was operating did not belong to him, was not placed there by him and was situated there entirely without his knowledge or consent.

At trial appellee offered evidence that the actual owner of the vehicle was then in prison in Kentucky on drug-related charges, but there was no development of the nature of those charges or of any connection between them and the incident involved in this case.

Appellee has never challenged the testimony of the police officers that he did consent to the search. At trial it was his theory that he consented because he was entirely innocent of any possession of illegal contraband and had no knowledge that it was in the borrowed vehicle. This was the principal issue ultimately put to the jury, and they resolved it against appellee. It is sufficient for present purposes to note that that issue involved questions of credibility of the various witnesses. The State, at trial, offered some contrary evidence as to the length of time appellee had possessed the car.

The case, therefore, clearly involved a search by consent. There is no claim of fraud, deceit, misrepresentation or the like. The sheriff and his investigator knew the appellee, and they testified that he also knew each of them. They were not in uniform at the time of their encounter with him on December 6, 1985, but the testimony is uncontradicted that he knew both of them to be police officers. The sheriff was unarmed, and his investigator at no time drew or displayed a firearm in any threatening or menacing manner, although the sheriff testified that his investigator probably did have a sidearm on his person.

The issue in this case, therefore, ultimately distills into a question of whether there was in fact any stop or seizure of appellee at all prior to his giving consent to the search so as to invoke Fourth Amendment considerations. As stated previously, we are confined to such evidence as was adduced at the hearing. There is no basis in the record for not accepting the trial judge's accrediting of the testimony presented at the hearing on the motion to suppress. Viewed in that light, we are of the opinion that the evidence does not preponderate against the finding by the trial judge that the search in this case was based upon consent of appellee freely and voluntarily given.

■ Further, there is no question in the case but that there never was a "stop" of appellee's vehicle by the investigating officers. At no time did they use blue lights, sirens or hand signals to direct appellee to pull to the shoulder of the road or stop his vehicle. The evidence is uncontradicted that before the officers ever approached appellee and Hill, his companion in the transaction, the two men had stopped their vehicles on the side or shoulder of a heavily travelled and congested public highway and were there conversing. The police officers did not block the path of either vehicle, but drove up behind the two parked cars and approached the drivers who were standing between the vehicles conversing. The officers knew appellee's companion, and he knew them. The officers also knew that both of the individuals had a reputation for dealing in contraband, and they knew that appellee had had one prior conviction for possession of contraband. They knew that that prior conviction had been the result of a plea bargain of more serious charges of selling and delivering. Appellee's companion had never been convicted, insofar as the officers knew, but through informants they knew that the companion, who was not a co-defendant in the present case and did not testify, had a reputation for dealing in illegal drugs.

■ There is no testimony that the officers in any way threatened the two individuals, advised them that they were under arrest, or otherwise undertook to intimidate or detain them prior to the search. Since the officers obviously had not

"stopped" the two individuals, each of whom was alone in the vehicle which he was driving, the question presented is whether the officers "seized" either of them prior to obtaining their consent to the search. There is no other basis suggested in the record upon which to vitiate the consent which was given.

In effect appellee insists that the officers had no right to request permission to search the vehicles under the circumstances. Appellee insists that the fact that the officers announced that they suspected a drug transaction and requested permission to search constituted a "seizure" of appellee and Hill within the meaning of the Fourth Amendment. Appellee then insists that the officers did not have sufficient information or articulable facts in their possession to justify any investigatory stop or seizure.

We are of the opinion that the evidence does not demonstrate that a seizure, as the word is constitutionally defined, occurred prior to the consensual search and that the evidence does not preponderate against the conclusion of the trial judge that the consent given by appellee and his companion was free of taint. In the very recent case of *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), the United States Supreme Court reviewed in depth the concept of a seizure within the meaning of the Fourth Amendment. The court pointed out that all of the circumstances surrounding the incident must be examined in each case.

In the *Chesternut* case, the court summarized the facts as follows:

Early on the afternoon of December 19, 1984, four officers riding in a marked police cruiser were engaged in routine patrol duties in metropolitan Detroit. As the cruiser came to an intersection, one of the officers observed a car pull over to the curb. A man got out of the car and approached respondent Michael Mose Chesternut, who was standing alone on the corner. When respondent saw the patrol car nearing the corner where he stood, he turned and began to run. As Officer Peltier, one of those in the car,

later testified, the patrol car followed respondent around the corner "to see where he was going." App 25. The cruiser quickly caught up with respondent and drove alongside him for a short distance. As they drove beside him, the officers observed respondent discard a number of packets he pulled from his right-hand pocket. Officer Peltier got out of the cruiser to examine the packets.° He discovered that they contained pills. While Peltier was engaged in this inspection, respondent, who had run only a few paces farther, stopped.

486 U.S. at ——, 108 S.Ct. at 1977, 100 L.Ed.2d at 569.

Because of his experience in dealing with narcotics, Peltier arrested respondent and took him to the police station. A search revealed further incriminating evidence. The Supreme Court unanimously held that no Fourth Amendment right of the accused had been violated and that no seizure of appellee had occurred prior to his actual arrest. The Supreme Court reversed a decision from the Michigan Court of Appeals that any "investigatory pursuit" amounts to a seizure and that as soon as the officers began their pursuit, the freedom of the accused was restricted.

The Supreme Court declined to accept the positions advanced by either the petitioning state authorities or by the accused. The Court said:

Petitioner argues that the Fourth Amendment is never implicated until an individual stops in response to the police's show of authority. Thus, petitioner would have us rule that a lack of objective and particularized suspicion would not poison police conduct, no matter how coercive, as long as the police did not succeed in actually apprehending the individual. Respondent contends, in sharp contrast, that any and all police "chases" are Fourth Amendment seizures. Respondent would have us rule that the police may never pursue an individual absent a particularized and objective basis for suspecting that he is engaged in criminal activity.

486 U.S. at ——, 108 S.Ct. at 1978–79, 100 L.Ed.2d at 571.

The Court approved neither position and summarized the law as follows:

> In *Terry v. Ohio*, 392 US 1, 20 L Ed 2d 889, 88 S Ct 1868, 44 Ohio Ops 2d 383 (1968), the Court noted:
>
> > "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id., at 19, n 16, 20 L Ed 2d 889, 88 S Ct 1868, 44 Ohio Ops 2d 383.
>
> A decade later in *United States v. Mendenhall*, [446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497], [ (1980) ] Justice Stewart, writing for himself and then Justice Rehnquist, first transposed this analysis into a test to be applied in determining whether "a person has been 'seized' within the meaning of the Fourth Amendment." 446 US, at 554, 64 L Ed 2d 497, 100 S Ct 1870. The test provides that the police can be said to have seized an individual "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Ibid. The Court has since embraced this test. See *INS v. Delgado*, 466 US [210], 215, 80 L Ed 2d 247, 104 S Ct 1758 [1762], [ (1984) ]. See also *Florida v. Royer*, 460 US 491, 502, 75 L Ed 2d 229, 103 S Ct 1319 (1983) (plurality opinion); id., [491] at 514, 75 L Ed 2d 229, 103 S Ct 1319 [at 1332] (Blackmun, J., dissenting).
>
> The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Moreover, what constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs. Compare *United States v. Mendenhall*, supra, (considering whether police request to see identification and ticket of individual who stopped upon police's approach constituted seizure), with *INS v. Delgado*, supra (considering whether INS "factory survey" conducted while employees continued to move about constituted seizure of entire work force).
>
> While the test is flexible enough to be applied to the whole range of police conduct in an equally broad range of settings, it calls for consistent application from one police encounter to the next, regardless of the particular individual's response to the actions of the police. The test's objective standard—looking to the reasonable man's interpretation of the conduct in question—allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment. 3 W. LaFave, Search and Seizure § 9.2(h), pp. 407–408 (2d ed 1987). This "reasonable person" standard also ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.

486 U.S. at ——; 108 S.Ct. at 1979–80; 100 L.Ed.2d at 571–72.

The question in the present case, therefore, is whether or not a "reasonable person" would conclude that he was not free to leave when the officers requested permission to search appellee's vehicle. Appellee offered no evidence on the subject, and there is no testimony that he was not free to leave or to refuse the request which was made. We have previously stated that no threats are shown in evidence, and it clearly was appellee's insistence at trial that his consent to search was voluntary because he had nothing to hide. The Supreme Court's test does not involve a "reasonable guilty person" but simply a "reasonable person" under all of the circumstances. Appellee insisted at trial that there was no reason why he should not give consent, because he had no idea at the time that any contraband was contained in the borrowed vehicle which he was driving.[1]

---

**1.** Police encounter consent sometimes as an "exculpatory stratagem" even when the accused

We do not find it necessary to discuss the proposition analyzed by the Court of Criminal Appeals of whether the officers had sufficient articulable facts or other information to justify a stop of appellee's vehicle, because no such stop occurred. The officers, in our opinion, did have enough information to make the request to search, and there is no evidence that either appellee or Hill was so intimidated or coerced as a result of this request that a trier of fact must conclude that they considered their freedom restrained. In a plurality opinion in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) it was stated:

> ... [l]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.

460 U.S. at 497, 103 S.Ct. at 1324, 75 L.Ed.2d at 236.

Numerous cases hold that officers do not seize an individual by simply talking to him or her in a public place or while the individual being questioned is sitting inside an already stopped automobile. *See Atchley v. State*, 393 So.2d 1034, 1038–1045 (Ala. Crim.App.1981); 3 LaFave Search and Seizure § 9.2(h) (2d ed. 1987). Other courts have held that a request to search, standing alone, is not conclusive evidence that a "seizure" has occurred. *See e.g. United States v. Mancini*, 802 F.2d 1326, 1329 (11th Cir.1986); *United States v. Jensen*, 689 F.2d 1361, 1363–64 (11th Cir.1982).

■ A statement by an officer that the accused has become the specific focus of an investigation is one circumstance which may be considered in determining whether a seizure has occurred, but all of the circumstances of the case must be examined. In most of the cases holding that a seizure had occurred, something more than a mere inquiry or request by police officers has

been shown. For example in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the accused was approached in an airport corridor and questioned by detectives who identified themselves. When he did not explain to their satisfaction discrepancies between his driver's license and the name shown on his airline ticket, he was asked to accompany the officers to a separate room for further questioning. Nothing of that sort appears to have occurred in the instant case. Given the theory of appellee that he was driving a borrowed car with no knowledge that it contained any illegal substance, we do not find that the evidence preponderates against the finding of the trial judge that the consent to search in the present case was voluntary, nor do we find that any seizure of appellee had occurred prior to or at the time he gave consent to the search.

Appellee relies upon the decision of this Court in *Hughes v. State*, 588 S.W.2d 296 (Tenn.1979) where it was held that officers lacked sufficient information to justify a stop and inquiry within the parameters of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There, however, one of the two defendants was placed in custody inside a police car and the other was ordered involuntarily to answer questions by the officers. No consent was first obtained, and the Court determined that the officers lacked sufficient reasonable or reliable information to detain or seize the two accused persons. We do not find the facts of the present case to be controlled by *Hughes*. Also distinguishable is *State v. Westbrooks*, 594 S.W.2d 741 (Tenn.Crim. App.1979) where the officers directed the defendant to stop his vehicle and submit to an unwarranted driver's license check.

The judgment of the Court of Criminal Appeals is reversed, and the cause is remanded to that court for consideration of the other issues on appeal which were raised by appellee. Costs incident to the appeal to this Court will be taxed to appel-

---

knows that a vehicle contains contraband. Consent may, but does not always, indicate inno-

cence. *See United States v. Manchester*, 711 F.2d 458, 462 (1st Cir.1983).

lee.  All other costs will be determined on remand.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.