IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2001

## STATE OF TENNESSEE v. WAYLON D. KNOTT

**State Appeal from the Circuit Court for Stewart County
No. 4-1231-CR-99     Allen Wallace, Judge**

---

**No. M2000-02524-CCA-R3-CD - Filed July 27, 2001**

---

The Appellant, Waylon D. Knott, was indicted by a Stewart County Grand Jury on one count of manufacturing methamphetamine, one count of possession with intent to sell methamphetamine, and one count of felony possession of drug paraphernalia. Following a traffic stop for improper registration, Knott, after first refusing, granted consent to search his vehicle, which resulted in the seizure of a quantity of drugs. Knott moved to suppress the evidence upon grounds that consent was not voluntarily given. The trial court granted Knott's motion to suppress and dismissed the indictment, finding that the "search was unconstitutional because the officer had no reasonable, articulable suspicion of further criminal activity to justify the request to search the vehicle and further detain [Knott]." The State appeals from the trial court's ruling asserting that Knott's consent was voluntary and therefore the search was valid. We find that the dispositive issues presented are: (1) whether Knott was unlawfully detained at the time that he consented to the search and, if so; (2) whether Knott's consent to search was voluntarily given. Because no findings were entered relevant to these issues, we are required to remand for findings of fact on these questions. Accordingly, the judgment of the trial court is reversed and the case remanded.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Reversed and Remanded.**

DAVID G. HAYES, J., delivered the opinion of the court, in which L. T. LAFFERTY, Sr.J., joined; THOMAS T. WOODALL, J., not participating,

William B. (Jake) Lockert, III, District Public Defender; Columbus Wade Bobo, Assistant Public Defender, Ashland City, Tennessee, for the Appellee, Waylon D. Knott.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; David H. Findley, Assistant Attorney General; and Carey J. Thompson, Assistant District Attorney General, for the Appellant, State of Tennessee.

# OPINION

## Factual Background

On June 18, 1999, Stewart County Chief Deputy Sheriff Kenneth Anderson observed the Appellant's truck drive by the sheriff's office in Dover. Anderson was familiar with the Appellant because several informants had previously informed Anderson that the Appellant was involved in manufacturing methamphetamine. Anderson followed the Appellant and a check revealed that the truck's license plates were registered to a different vehicle. Anderson effected a stop of the Appellant's truck, which included the passenger, Jennifer Davenport, at 9:53 p.m.

At 9:54 p.m., Anderson requested Deputy Jason Gillespie, a member of the Drug Task Force unit, to join him since Gillespie was experienced in drug investigations. At 9:57 p.m., Tennessee State Trooper Brett Bumpus, who had overheard the radio transmissions, joined Anderson and Gillespie at the scene. Anderson questioned the Appellant about the vehicle registration. The Appellant explained that he had just purchased a different vehicle and had not yet "switched" the registration. Anderson continued to check the driver's license of the Appellant and checked for any outstanding warrants on the passenger, Davenport. At 10:04 p.m., the dispatcher notified Anderson that there was nothing on file on either occupant. Anderson then continued the process of writing the citation for the registration violation. Anderson testified that it would take an average of twelve to thirteen minutes to complete the average citation, but he did not remember the specific time he completed the citation in this case.

While Deputy Anderson was occupied obtaining information from the dispatcher concerning the vehicle's registration and whether warrants were outstanding, Deputy Gillespie approached the Appellant and asked permission to search his truck. The Appellant refused. The proof at the hearing indicates that the citation had not been issued at this point. After the Appellant informed Deputy Gillespie that he would not permit him to search, the following events are related by Gillespie:

> At that time I told [the Appellant] that I was going to contact the K-9; and I was requesting that he leave his vehicle here while I waited on the K-9 unit. I went to the car, got on the radio and dispatched. . . . both K-9 officers that work for the 23rd Task Force. When I got back out of the car, [the Appellant] told me that he was in a hurry; and that if I want to go on and look inside his vehicle, I could. I told him it was up to him. It didn't matter to me. I didn't mind waiting on the dog. He said no, go on and search.

The radio log indicates that Deputy Gillespie requested the K-9 unit at 10:09 p.m. Deputy Anderson corroborated Deputy Gillespie's testimony and stated that he overheard the Appellant advise Gillespie to "go-ahead" and search. Deputy Anderson explained that he did not participate in the search because '[he] continued writing [the] citation." Immediately after obtaining consent to search, Deputy Gillespie and Trooper Bumpus began a search of the vehicle. The methamphetamine and

drug paraphernalia, which formed the basis for the indictments, were found by Trooper Bumpus during the search. The search was concluded before the K-9 unit arrived. At 10:27 p.m., the K-9 unit arrived and no further drugs were found.

## ANALYSIS

The State contends that the Appellant's consent to the search of his vehicle was voluntarily given and accordingly, the trial court's suppression of the evidence seized was error. In reviewing a denial of a motion to suppress, this court looks to the facts adduced at the suppression hearing which are most favorable to the prevailing party. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000)(citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)); see also State v. Timothy Walton, 41 S.W.3d 75, 81 (Tenn. 2001). In considering the evidence presented at the hearing, this court extends great deference to the fact-finding of the suppression hearing judge with respect to weighing credibility, determining facts, and resolving conflicts in the evidence. Daniel, 12 S.W.3d at 423. Indeed, these findings will be upheld unless the evidence preponderates otherwise. Id. In this case, the trial court suppressed the evidence, finding:

> Despite having sufficient probable cause to make the stop, and obtaining consent for the search from the defendant, the search was unconstitutional because the officers had no reasonable, articulable suspicion of further criminal activity to justify the request to search the vehicle and to further detain the defendant.

We begin our analysis by first observing that not all encounters between police officers and citizens constitute "seizure" within the meaning of the Fourth Amendment. See Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879, n. 16 (1968). In State v. Daniel, 12 S.W.3d at 424, our supreme court explained:

> In construing the demands of the Fourth Amendment, courts have recognized three distinct types of police-citizen interactions: (1) a full scale arrest which must be supported by probable cause, see Brown v. Illinois, 422 U.S. 590, 95 S. Ct. 2254 (1975); (2) a brief investigatory detention which must be supported by reasonable suspicion, see Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968); and (3) brief police-citizen encounters which require no objective justification, see Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991)(citations omitted). . . . While arrests and investigatory detentions implicate varying degrees of constitutional protection, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n. 16, 88 S. Ct. 1868, at 1879 n. 16; State v. Crutcher, 989 S.W.2d 295, 300 (Tenn. 1999); State v. Moore, 776 S.W.2d 933, 937 (Tenn.1989).

Indeed, courts have repeatedly held that even when police have no basis for suspecting that an individual has committed or is about to commit a crime, the officer may approach an individual in a public place and ask questions without implicating constitutional protections. Bostick, 501 U.S. at 434, 111 S. Ct. at 2386; Florida v. Royer, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324 (1983) (plurality opinion)(citations omitted).

The trial court's resolution of the suppression motion turned on the point that because "the officers had no reasonable articulable suspicion of further criminal activity to justify the request to search and to further detain the defendant," the search was unlawful. This analysis is misplaced. If the Appellant's consent was voluntary, as argued by the State at trial and on appeal, the fact that the police lacked any suspicion of criminal activity to request a search is irrelevant. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973). "One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. at 219, 93 S. Ct. at 2043-44. The burden of proof rests upon the State to show by a preponderance of the evidence that the consent to a warrantless search was given freely and voluntarily. State v. Ashworth, 3 S.W.3d 25, 28 (Tenn. Crim. App. 1999)(citing Schneckloth v. Bustamonte, 412 U.S. at 248-249, 93 S. Ct. at 2059). Where there has been a prior constitutional violation, the government's burden to prove the defendant consented becomes all the more difficult. United States v. Smith, 574 F.2d 882, 887 (6th Cir. 1978)(citing United States v. Bazinet, 462 F.2d 982, 989-90 (8th Cir.), cert. denied, 409 U.S. 1010, 93 S. Ct. 453 ((1972)). The validity of the search depends upon whether, based upon the totality of the circumstances, the consent was "voluntarily given, and not the result of duress or coercion." Schneckloth v. Bustamonte, 412 U.S. at 248-249, 93 S. Ct. at 2059.

The following eight factors have been used when evaluating the voluntariness of the consent:

(1) voluntariness of the accused's custodial status;
(2) the length of the detention of the accused before he or she gave consent;
(3) the presence of coercive police procedures;
(4) the accused's awareness of his or her right to refuse to consent;
(5) the accused's age, education and intelligence;
(6) whether the accused understands his or her constitutional rights;
(7) the extent of his or her previous experience with the police; and
(8) whether the accused was injured, intoxicated, or in ill health.

See generally State v. Carter, 16 S.W.3d 762, 769 (Tenn. 2000); see also United States v. Ivy, 165 F.3d 397, 402 (6th Cir. 1998). Although all eight factors are relevant, no single factor is dispositive nor are they all-inclusive factors for determining voluntariness. Id. Of critical importance is factor (1), the voluntariness of the Appellant's custodial status, i.e., whether at the time the Appellant granted permission to search he was unlawfully detained. Even if consent is voluntarily given, it does not remove the taint of an illegal detention if it is the product of that detention and not an independent act of free will. State v. Huddleston, 924 S.W.2d 666, 674 (Tenn. 1996); United States

-4-

v. Richardson, 949 F.2d 851, 858 (6ᵗʰ Cir. 1991).  Moreover, if it is determined that the Appellant was unlawfully detained, *i.e.*, a Fourth Amendment violation occurred, at the time consent to search was granted, then the "voluntariness" test is no longer applicable.  Huddleston, 924 S.W.2d at 673-74.[1]

Instead, in order to determine whether the consent is sufficiently removed from the taint of the illegal arrest, the reviewing court must consider: (1) the presence or absence of *Miranda* warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and finally, of particular significance, (4) the purpose and flagrancy of the official misconduct.  Huddleston, 924 S.W.2d at 674-75.  As previously observed, whether the Appellant was seized for purposes of the Fourth Amendment at the time consent was granted or whether his presence could be classified as a voluntary police-citizen encounter depends upon whether the citation was issued before or after consent was given.  No specific findings were entered by the trial court on this question of vital importance.  Also included within this issue is the question of whether Deputy Anderson delayed the Appellant any longer than was necessary to effect the purpose of the stop.  In assessing the effect of the length of the detention, a reviewing court is required to consider whether the police diligently pursued issuance of the citation or whether the Appellant's detention resulted in a *de facto* seizure.  See United States. v. Sharpe, 470 U.S. 675, 684-685, 105 S. Ct. 1568, 1574-1575 (1985).  Although we are provided with a multitude of radio log events and other relevant and non-relevant happenings at the scene on the date in question, the time frame of the two critical events which have not been factually determined are: (1) the time at which issuance of the citation was or should have been completed; and (2) the time Appellant's consent to search was given.  Moreover, as previously noted, we are without findings of fact on the question of the voluntariness of the Appellant's consent, if, in fact, it is determined that the Appellant's consent to search was given while he was lawfully detained.

In this case, our review is precluded by the absence of these critical findings.  To resolve the issue of consent, we, as an appellate court, would be forced to act as fact finder and assess the credibility of the witnesses who testified at the hearing, resolve the contradictions and weigh the evidence.  This court does not possess fact finding authority; our jurisdiction being appellate only.  Tenn. Code Ann. § 16-5-108.  This court reviews the application of the law to the facts *de novo*.  See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).  If the findings are incomplete and/or the record is insufficient, *de novo* review will have relatively little benefits when the issue presented is of an extremely fact-bound nature.  Ornelas v. United States, 517 U.S. 690, 700-701, 116 S. Ct. 1657, 1664 (1996)(Scalia, J., dissenting).  *De novo* review is permitted to prevent a miscarriage of justice resulting from the legal determination of a single judge, not to reconstruct the factual determinations reserved for the trial court when none are found.  Thus, if the trial court's findings of fact are incomplete or not to be found at all, and these findings cannot be substantially

---

[1]"[W]e agree with those jurisdictions that have rejected the voluntariness test and have applied instead a 'fruit of the poison tree' analysis in determining whether or not a statement obtained during an illegal detention must be suppressed." State v. Huddleston, 924 S.W.2d at 674 (citing Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963)).

supplemented by the record, an appellate court is prevented from completing any meaningful review of the law applicable to those pertinent factors.  This is precisely the situation in the case before this court.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court's decision to suppress the evidence was based upon an erroneous ground which improvidently pretermitted findings of fact relevant to the determination of whether the Appellant was unlawfully detained and his consent voluntarily given.  Accordingly, we reverse the judgment of the trial court and remand for further factual determinations consistent with this opinion.

_____
DAVID G. HAYES, JUDGE