**UNITED STATES of America, Appellee,**

v.

**Carmen J. CIVELLA, Appellant.**

**No. 81–1160.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1981.

Decided Dec. 4, 1981.

---

1124

J. Whitfield Moody, U. S. Atty., Robert E. Larsen, argued, Asst. U. S. Atty., Kansas City, Mo., for appellee.

James R. Wyrsch, argued, Kansas City, Mo., for appellant.

Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

GIBSON, Senior Circuit Judge.

Defendant-appellant Carmen J. Civella appeals from his conviction in the United States District Court for the Western District of Missouri [1] for willful failure to file a corporate tax return. 26 U.S.C. § 7203. We affirm his conviction.

## I.

Civella was the president, principal owner, and chief operating officer of CMS, Inc., the owner of a nightclub named "Mother's." A grand jury issued a three-count indictment against Civella in his capacity as president of CMS, based on violations of the income tax laws regarding the operation of Mother's. The first count charged Civella with filing a false return for the fiscal year ending October 31, 1974, in violation of 26 U.S.C. § 7206(2). The second count charged him with tax evasion for the fiscal year ending October 31, 1975, in violation of 26 U.S.C. § 7201. The third count charged him with willful failure to file a return for the year ending October 31, 1976, in violation of 26 U.S.C. § 7203. The first two counts were based on a failure to report "door income," which was collected as an admission or cover charge. As to the third count, there is no dispute the return was not filed, and the Government's evidence showed that Mother's had gross income of $341,478. The only question is whether the failure to file was willful.

---

1. The Honorable Russell G. Clark, Chief Judge, United States District Court for the Western District of Missouri.

Although the jury returned guilty verdicts on all three counts, Civella was convicted only on the third, receiving two years' probation and a $1,000 fine. The court acquitted Civella on the first count because the evidence did not sufficiently show he was responsible for the false return. The court ordered a new trial on the second count because the statistical evidence used to estimate unreported income was deemed unreliable by the court.

## II.

On appeal, Civella urges reversal of the trial court, both as to the law and as to the sufficiency of the evidence. The most important of these claims goes to the question of whether the evidence was sufficient to show that Civella's failure to file a return was willful.

Civella and his attorney-accountant testified that the return was initially delayed because Mother's business records mistakenly were placed at another nightclub in which Civella had an interest. They were discovered almost a year after the January 15, 1977, deadline for filing the return. The records were given to the Internal Revenue Service early in 1978, and they were returned to Civella on or around October 31, 1978. Civella did not thereafter file the return, based on his attorney's advice.

■ Civella views his testimony and that of his attorney as only demonstrating inadvertence or negligence. Circumstances like the advice of counsel or the inefficiency of an accountant can negate willfulness, but they do not constitute an absolute defense.[2] *United States v. Conforte*, 624 F.2d 869, 876 (9th Cir. 1980), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). *See also United States v. Wilson*, 550 F.2d 259,

260 (5th Cir. 1977). However, in light of cross-examination, the jury could have rejected the testimony asserting inadvertence or negligence.

■ Also, there was other evidence before the jury which allowed it to infer that Civella's failure to file was willful. The jury could have found willfulness from testimony that CMS records underreported door income. Concealment of income is evidence of an attempt to evade taxes, *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943), and the jury could have concluded the attempt was made by failing to file. *See United States v. Platt*, 435 F.2d 789, 793 n.6 (2d Cir. 1970).

■■ When reviewing the sufficiency of evidence, our function is to determine whether a reasonable person could fairly find the elements of the crime beyond a reasonable doubt. *United States v. Quinn*, 467 F.2d 624, 627 (8th Cir. 1972), *cert. denied*, 410 U.S. 935, 93 S.Ct. 1390, 35 L.Ed.2d 599 (1973). There was sufficient evidence of willfulness on Civella's part to allow the jury to render a guilty verdict on Count III.

## III.

Civella attacks his conviction on numerous other grounds regarding the indictment and trial.

### A.

■ As to the indictment, he first argues that it should have been dismissed because of media identification of his father and uncle as underworld figures. However, the mere existence of publicity does not warrant dismissal of an indictment. If such were the case, no well-known person could

---

**2.** The fact that a completed return would incriminate a taxpayer does not relieve him of his duty to file under § 7203. At a minimum, he must assert his fifth amendment right against self-incrimination as to specific items of requested information on the tax return, and the return must be filed. *United States v. Sullivan*, 274 U.S. 259, 263, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). *See also Garner v. United States*, 424 U.S. 648, 651 n.3, 96 S.Ct. 1178, 1180 n.3, 47 L.Ed.2d 370 (1976); *Grosso v. United States*,

390 U.S. 62, 72–73, 88 S.Ct. 709, 715–16, 19 L.Ed.2d 906 (1968) (Brennan, J., concurring). A mere assertion of a fifth amendment claim, even on a tax return, will not be a defense to a § 7203 prosecution. *United States v. Miller*, 634 F.2d 1134 (8th Cir. 1980), *cert. denied*, 451 U.S. 942, 101 S.Ct. 2026, 68 L.Ed.2d 330 (1981). Civella did not file a return at all. His only assertion of a fifth amendment privilege was to refer an IRS investigator to his lawyer. Appellant's Brief at 20 n.2.

be charged with a crime. *United States v. Hoffa*, 205 F.Supp. 710, 717 (S.D.Fla.1962), *cert. denied*, 371 U.S. 892, 83 S.Ct. 188, 9 L.Ed.2d 125 (1962). *See also* 8 *Moore's Federal Practice* (2d ed.) 6–97 ¶ 6.04[9]. Even prejudicial publicity generated by the Government would not affect the validity of the indictment, although contempt sanctions could be in order in such a case. *Id.* at 6–97–98. In Civella's case, publicity was about his relatives, not himself, and the trial court found no reason to believe the publicity was generated by the Government. Therefore, the publicity presents no grounds for dismissing the indictment.

### B.

Civella contends the problems with the publicity were exacerbated by prejudicial remarks made by the Assistant United States Attorney. The Assistant U.S. Attorney identified defendant as the son of Carl Civella and the cousin of Nicholas Civella,[3] both of whom have been identified in the media as underworld figures. Brief of Appellant at 11. Defendant argues that such identification made the Assistant U.S. Attorney a witness before the grand jury (contrary to his duties as an attorney) and was unfairly prejudicial.

In fact, the conduct of the Assistant U.S. Attorney was entirely proper. The relationship was pointed out to the grand jury to show that defendant was not the subject of the great media attention. The prosecutor did not become a witness simply by making clear to the grand jurors which person was the subject of the investigation.

### C.

Civella accuses the prosecution of additional misconduct in not presenting exculpatory evidence to the grand jury. The grand jury was not told that statistical extrapolations were the basis of the IRS estimates of underreported income; nor was the grand jury given evidence of Civella's explanations for the irregularities.

The prosecutor is normally not under a duty to disclose facts which would be the basis of a defense at the trial. A grand jury proceeding is not constituted to be an adversary hearing; its function is to assess probable cause to believe that the suspect committed the offense in question. A grand jury hearing is not a mini-trial. *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979); *United States v. Ruyle*, 524 F.2d 1133, 1136 (6th Cir. 1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976); 8 *Moore's Federal Practice* (2d ed.) 6–60 ¶ 6.03[2]. The general rule is that an indictment returned by a legally constituted and unbiased grand jury is enough to call for a trial of the charge on the merits. *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).

### D.

The last challenge to the indictment is based on the prosecutor's presenting a signed indictment to the grand jury. Civella argues that knowledge by the grand jurors that the Government had already approved the indictment unduly influenced the grand jury.

A valid indictment must be signed by an attorney for the Government. Fed.R.Crim.P. 7(c)(1). When the Government shows a signed indictment to the grand jury, it runs a risk of presenting an issue of undue influence. Nevertheless, we see no reason to assume that such a practice necessarily constitutes undue influence. A pre-signed indictment alone does not show undue influence on the grand jury. *United States v. Frantze*, 655 F.2d 128, 131 (8th Cir. 1981). *United States v. Levine*, 457 F.2d 1186, 1189 (10th Cir. 1972); *United States v. Climatemp, Inc.*, 482 F.Supp. 376, 386 (N.D.Ill.1979); *United States v. Tedesco*, 441 F.Supp. 1336, 1342 (M.D.Pa.1977). In the only case that found a pre-signed indictment improper, *United States v. Gold*, 470 F.Supp. 1336, 1355 (N.D.Ill.1979), the prosecutors had engaged in other improper action. In *Gold*, undue influence was evi-

---

**3.** In fact, defendant is Nicholas Civella's neph- ew. Brief of Appellant at 11.

denced by the grand jury's deliberating for ten to twenty minutes over evidence accumulated for eighteen months on an eleven-count indictment with seven defendants named in various counts. Furthermore, even though *Gold* was not appealed, the Seventh Circuit, in a companion case, called it "an unusual decision." *In re November 1979 Grand Jury*, 616 F.2d 1021, 1023 (7th Cir. 1980).

### IV.

Civella's next point is that the trial court should have severed the trial of the three counts against him. He argues that the jury accumulated the evidence from the three counts and was influenced by the inadmissible statistical evidence in finding him guilty on the third count.

Two or more offenses can be charged against a defendant in an indictment if they are of the same or similar character or constitute parts of a common scheme. Fed.R.Crim.P. 8(a). All three counts were similar in that they related to income tax reporting and payment obligations of the corporation and its chief corporate officer in consecutive years. Even when the offenses are properly joined in the indictment, the trial court has the option of severing the counts to avoid prejudice. Fed.R.Crim.P. 14. Severance under that rule is a matter of discretion for the trial court. *United States v. Shearer*, 606 F.2d 819 (8th Cir. 1979); *United States v. Bowman*, 602 F.2d 160, 163 (8th Cir. 1979).

In light of the weight of the evidence against Civella on Count III, *see* section II *ante*, and the similarity of the charges, we hold that the trial court did not abuse its discretion in denying Civella's motions for severance and a new trial based on the failure to sever.

### V.

The next argument made by Civella is that he was entitled to a hearing on the question of whether he was the subject of illegal electronic surveillance. The United States had a duty to affirm or deny Civella's allegations that certain evidence was inadmissible as the primary product of an unlawful act. 18 U.S.C. § 3504(a)(1) (1976). Civella argues that the Government's denials were so conclusory that he was entitled to suppression and disclosure of evidence of electronic surveillance.

The Government admitted that Civella was the subject of electronic surveillance by agencies other than the IRS on two occasions. In the first, the other party to the conversation consented to the surveillance. The second was made pursuant to a court order. Three IRS investigators submitted affidavits stating that the IRS did not conduct electronic surveillance of Civella and that the IRS did not receive information as a result of electronic surveillance by any other governmental agencies. In the absence of more specific allegations by Civella, the Government's response was reasonably specific. Civella was not entitled to a hearing on this issue.

### VI.

Another challenge made by Civella is aimed at the use of administrative summonses by the IRS. He argues that since such summonses are for determining civil liability, they are improper when the IRS is conducting a criminal investigation.

The IRS began its investigation of Civella in 1974. A civil agent was assigned to the case in October 1976, although his work was suspended until completion of the criminal prosecution. The first summons was issued in October 1977. Authority for the summons apparently rested in 26 U.S.C. § 7602.

Civella's assertion that a criminal investigation precludes the use of administrative summonses is incorrect. All that § 7602 requires is that the summons not be issued solely for a criminal purpose. *United States v. LaSalle National Bank*, 437 U.S. 298, 316 n.18, 318, 98 S.Ct. 2357, 2367 n.18, 2368, 57 L.Ed.2d 221 (1978). Abandonment of the civil investigation is conclusively presumed to have occurred when the IRS recommends criminal prosecution to the Justice Department. *Id.* at 311–13, 98 S.Ct. at 2364–65. The summonses preceded such

a recommendation in Civella's case. Abandonment of a civil purpose can be shown by other means, but the burden is a heavy one, *id.* at 316, 98 S.Ct. at 2367, and "[t]he Government does not sacrifice its interest in unpaid taxes just because a criminal prosecution begins." *Id.* at 311–12, 98 S.Ct. at 2364–65. A defendant would have to show, for instance, that the IRS had delayed a recommendation of prosecution to the Justice Department simply to take advantage of § 7602. *Id.* at 317, 98 S.Ct. at 2367. The fact that an IRS special agent is interested only in a criminal prosecution does not show abandonment of a civil purpose. *Id.* at 314–15, 98 S.Ct. at 2366.

## VII.

The last group of Civella's objections goes to the testimony and cross-examination of the Government's undercover agents.

### A.

 At trial, two Government witnesses testified as to the door income at Mother's. The witnesses were Charles Carpenter, an undercover informant who worked as a doorman and manager at Mother's, and Beth Ruona, an IRS special agent who worked as a waitress and "hat check girl." Carpenter periodically transmitted door income counts to an IRS agent, who recorded the counts in memoranda. Carpenter routinely reviewed the memoranda to ensure that the information was properly recorded. Ruona gave the IRS memoranda which contained her door income counts. Summaries of the door income counts were admitted into evidence as recorded recollection.

A record concerning a matter about which a witness once had knowledge but cannot recall when asked to testify can be admitted into evidence if the record was made or adopted by the witness when the matter was fresh in his memory and it correctly reflects his knowledge. Fed.R. Evid. 803(5). The trial court was satisfied that the summaries complied with the rule, and we perceive no reason to disagree with that conclusion.

### B.

Civella claims that informant Carpenter was paid according to the quality of the information he produced, and that such an arrangement was an impermissible contingency fee.

 Civella relies on *Williamson v. United States*, 311 F.2d 441 (5th Cir. 1962), *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 724 (1965). The court in that case reversed a conviction because the informant had been promised a payment for producing admissible evidence against a defendant. *Id.* at 444. The reason for reversal was that such an arrangement constituted entrapment. *Id.* In *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the Supreme Court noted that lower courts had gone beyond its mandate in applying the entrapment defense, and that the entrapment defense is "relatively limited." *Id.* at 435, 93 S.Ct. at 1644. The test for the entrapment defense is whether the Government "actually implants the criminal design in the mind of the defendant . . . ." *Id.* at 436, 93 S.Ct. at 1645. There is no evidence that Carpenter did anything to encourage Civella to violate the tax laws. There is no bona fide issue of entrapment in any phase of this case.

### C.

 Civella complains of the district court's restricting the cross-examination of Carpenter. After Carpenter testified that he had not made required child support payments, the defense counsel wanted to ask Carpenter whether he knew that nonpayment was a crime. The purported purpose was to find out whether the IRS had intervened with state authorities on Carpenter's behalf and whether he had taken money from Mother's to pay the child support.

The district court had a duty to determine if the probative value was substantially outweighed by the danger of unfair prejudice and confusion of issues. Fed.R.Evid. 403, 608(b) (Advisory Comm. Note (2)). The court did not abuse its discretion in restricting the cross-examination.

## D.

█ Civella next argues that Carpenter's taking of records from Mother's without a search warrant was an unreasonable search and seizure.

None of the material taken by Carpenter was introduced into evidence; the IRS agent working on the case testified that the records were not used at all. Even if the search were unconstitutional, the decision of which we forgo, the fact that the records were not introduced into evidence would make the denial of Civella's motion to suppress harmless error.

## E.

Civella's final complaint is that the district court should have allowed him to see the informant file of Carpenter, the tax returns of Carpenter, and the personnel file of Carpenter while he was a police officer. Civella argues that he needed those items for cross-examination of Carpenter.

█ A prosecutor is required to disclose material evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A combing of the prosecutor's files need not be permitted. *Evans v. Janing*, 489 F.2d 470, 474 (8th Cir. 1973). Civella was allowed to interview Carpenter regarding his income tax returns. The district court inspected, *in camera*, the informant and police personnel files and determined that no *Brady* material had been withheld. We have no reason to dispute that determination.

## VIII.

After carefully reviewing the thirteen issues and subissues raised by appellant, we hold that the trial court did not commit any reversible errors in conducting the trial. The conviction of Civella is affirmed.