UNITED STATES of America, Appellee,

v.

Manuel AGUIAR, a/k/a Bruce Woods, Appellant.

No. 86–5533.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1986.

Decided Aug. 4, 1987.

Rehearing and Rehearing En Banc Denied Sept. 4, 1987.

Rodney S. Toth, Charlotte, N.C., on brief, for appellant.

Max O. Cogburn, Jr., Chief Asst. U.S. Atty. (Charles R. Brewer, U.S. Atty., Asheville, N.C., on brief), for appellee.

Before WIDENER, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and MAXWELL, United States District Judge for the Northern District of West Virginia, sitting by designation.

HAYNSWORTH, Senior Circuit Judge:

This is another case of an arrest in an airport of a drug courier in which the courier unsuccessfully sought suppression of cocaine and drug transaction records seized in the airport search.

After denial of his suppression motion, Augiar entered a plea of guilty to the count of the indictment charging him with possession with intent to distribute cocaine, after having reserved the right to appeal the denial of his suppression motion pursuant to Fed.R.Crim.P. 11(a)(2).

## I.

Upon arrival at the Charlotte, North Carolina airport of a Piedmont Airlines flight from Miami, two unidentified "concerned citizens" requested law enforcement officials to meet them at the information desk. SBI Agent J.A. Davis and Charlotte police officer Donald Harky responded. They were told by the two concerned citizens that two Hispanic men on the flight from Miami were suspected of using cocaine. The citizens reported that the two Hispanics, who claimed to be Cuban boat people, had been repeatedly rubbing their noses. They led the officers to a bar where Augiar and Aleman were seated at a circular booth with two pieces of luggage on the seat between them. Augiar was observed as he left the bar and went to a restroom. As Augiar was returning from the restroom to the bar, Harky noticed a large bulge on Augiar's left ankle and some white plastic showing beneath the cuff of his left trouser leg. Harky testified that he had observed other passengers' with bulges at the ankles and that on each occasion it turned out that the bulge was a packet of illegal drugs.

Harky was in casual civilian dress, but as Augiar approached, Harky produced his official identification and said "Excuse me, sir, may I talk with you?" After taking a backward step and a brief pause, Augiar responded "Sure, I'll talk with you." Upon request to see his plane ticket, Augiar produced one issued in the name of Bruce Woods. It was for a one-way flight from Miami, having been paid for in cash, and there were no baggage claim checks.

Harky asked Augiar if he had any identification. Augiar said that he did not. Augiar inquired what the problem was and was told that a narcotics investigation was being conducted. Augiar inquired about an arrest warrant. Harky said he had no arrest warrant but placed Augiar under arrest. Harky then reached down to Augiar's left ankle and removed a white plastic shower cap containing a white envelope. The envelope contained white powder, later determined to be cocaine.

Agent Davis then approached Aleman and told him of Augiar's arrest. He agreed to accompany the officers to the Narcotics Interdiction Office where he was found to have a small quantity of marijuana on his person. In the luggage of the two men there was another plane ticket in the name of Bruce Woods, a large plastic bag containing cocaine and business records of a number of drug transactions.

## II.

██ Augiar first contends that the initial encounter with Harky was not consensual but a *Terry*-stop for which there was no supportive reasonable suspicion. Augiar emphasizes the initial display of Harky's official identification, the fact that Augiar was not told he was free to leave, the fact that Augiar's initial response was a backward step and the fact that he soon inquired what the problem was.

The finding that his initial encounter was consensual is not clearly erroneous. Harky testified that he would have detained Augiar if Augiar had not agreed to talk with him. That subjective intention may be considered as lending coloration to the encounter, but that does not compel a finding that the initial encounter was not consensual. Augiar was faced with a single law enforcement officer dressed in casual civilian clothing. Until the arrest, Harky did not touch Augiar. Harky made no move in an apparent attempt to place himself in the way of Augiar's departure, and the plane ticket was returned to Augiar before Harky inquired about the existence of any identification. Except for the fact that Harky had identified himself as a law enforcement official, there was no showing of force or intimidating threat.

The finding that the encounter was consensual and that Harky had requested, rather than commanded, that Augiar speak with him is not clearly erroneous.

## III.

██ Augiar questions the existence of probable cause to arrest him, relying upon *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). He contends

that the fact that he met a number of drug courier profile characteristics did not supply probable cause to arrest him. That was the holding in *Royer*, but there was more here than the fact that Augiar met a number of the well-known drug courier profile characteristics. There was the large bulge at the left ankle and the piece of white plastic that could be observed when Augiar walked coupled with the testimony that Harky observed others with such bulges and that the bulge had always turned out to be packets of illicit drugs. Nor can the observed bulge and white plastic be dismissed as just another drug courier profile characteristic. For a variety of reasons, many innocent persons would exhibit some or even many of those characteristics, but few innocent people carry treasures in packets wrapped in plastic and strapped to their ankles. A United States Navy enlisted man in uniform without pockets may carry a package of cigarettes in his socks, but Augiar was not in any such uniform. If other innocent people carry precious possessions in packets strapped to their ankles, they must be extremely rare.

The fact that Augiar met a number of the drug courier profile characteristics—he — he traveled on a flight from Miami, a fertile source of narcotics, on a one-way ticket issued in a false name and paid for in cash and that there were no baggage claim checks—alone was not enough to constitute probable cause for arrest. Whether or not the policeman's observance of the bulge at the ankle alone was enough to constitute probable cause for arrest, we need not decide, but in combination with the drug courier profile characteristics exhibited by Augiar, it would constitute probable cause for arrest. Out of the policeman's experience, he recognized that the bulge was probably caused by a packet of illicit drugs strapped to the ankle. What the policeman knew and observed therefore was far more than the fact that Augiar met the generalized drug courier profile characteristics.

## IV.

■ The search of the envelope was lawful as incident to the lawful arrest, as was the subsequent search of the luggage and seizure of the large packet of cocaine and the records of drug transactions. Thus, the district court properly denied the defendant's suppression motion.

AFFIRMED.