# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### DECEMBER 1998 SESSION

**FILED**

April 16, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **CARLOS L. ACEVEDO,** | ) | |
| | ) | **C.C.A. NO. 01C01-9711-CR-00541** |
| Appellant, | ) | |
| | ) | **DAVIDSON COUNTY** |
| VS. | ) | |
| | ) | **HON. THOMAS H. SHRIVER,** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Post-Conviction) |


<u>FOR THE APPELLANT:</u>                  <u>FOR THE APPELLEE:</u>


**GREGORY D. SMITH**                    **JOHN KNOX WALKUP**
One Public Square, Suite 321           Attorney General & Reporter
Clarksville, TN 37040

                                       **TIMOTHY BEHAN**
                                       Asst. Attorney General
                                       John Sevier Bldg.
                                       425 Fifth Ave., North
                                       Nashville, TN  37243-0493


                                       **VICTOR S. JOHNSON, III**
                                       District Attorney General


                                       **JON SEABORG**
                                       Asst. District Attorney General
                                       222 Second Ave., North, Suite 500
                                       Nashville, TN 37201


OPINION FILED:_____


**AFFIRMED**


**JOHN H. PEAY,**
Judge

**O P I N I O N**

In April 1994, the petitioner was charged by indictment with possession of cocaine and possession of marijuana after a search of his person revealed drugs and money. He filed a motion to suppress the drugs and money, which was denied. He then entered a plea of nolo contendere and attempted to preserve his right to appeal the suppression issue. On appeal, however, this Court determined that because the petitioner's judgment did not refer to a certified question of law for appeal, the petitioner had waived his right to appeal. See State v. Carlos L. Acevedo, 01C01-9602-CR-00061, Davidson County (Tenn. Crim. App. filed November 22, 1996, at Nashville). This Court did not address the merits of the suppression issue. See id.

The petitioner filed a petition for post-conviction relief, asking for a delayed appeal because counsel's error in failing to preserve his right to appeal prejudicially prevented him from appealing the merits of the suppression issue. In an agreed order signed by the post-conviction judge, the petitioner and the State stipulated that petitioner was entitled to a delayed appeal because he was prejudiced by his counsel's error. This case is now before this Court by delayed appeal, the sole issue being whether the trial court properly denied the petitioner's motion to suppress.

In its brief, the State argues that this case should be dismissed because a delayed appeal is inappropriate and cannot resurrect an issue previously waived. The State also argues that this case should be dismissed because the petitioner's counsel was not ineffective for failing to properly preserve the suppression issue for appeal. The State's arguments must fail because by agreed order, the State stipulated "that Petitioner's petition for post-conviction relief, which requests a delayed appeal on a

reserved issue of appellate review, should be granted."

As stated in this Court's previous opinion, the facts of this case are as follows:

On July 9, 1993, Agent Gary Luther of the Twenty-First Judicial Task Force telephoned Officer Perry Buck, who was assigned to the Federal Drug Task Force at the Nashville International Airport. Luther informed Buck that he was "working" the Defendant, a drug courier who was about to fly from Nashville to Texas. Luther stated that he was attempting to arrive at the airport before the Defendant's plane departed but was unsure as to whether he would be able to do so. As a result, Luther asked Buck to "surveil" and "interview" the Defendant. He gave Buck the name of the Defendant and a physical description.

Buck and three other officers began looking for the Defendant. As they walked toward the gate of the Defendant's departing flight, they identified a man fitting the description given by Agent Luther sitting at a restaurant in the concourse. They approached him, identified themselves, and asked if they could speak with him, to which the Defendant responded affirmatively. The officers asked the Defendant where he was going and other "preliminary" matters, and then requested his plane ticket. They informed the Defendant that they suspected him of carrying drugs and asked him for consent to search his person. According to Buck, the Defendant willfully consented. They subsequently asked the Defendant if he wanted to go to a more private location for the search. According to Buck, the Defendant responded affirmatively, and they all went to a men's restroom adjacent to the restaurant.

The officers conducted a pat-down search of the Defendant which revealed no contraband. They then asked the Defendant to remove his boots. As the Defendant removed one of his boots, a quantity of United States currency fell onto the floor. The Defendant fled the scene but was apprehended in the concourse after a short chase. The officers discovered a quantity of both cocaine and marijuana in the Defendant's socks.

The defendant was subsequently indicted for possession of cocaine with intent to deliver and for possession of marijuana with intent to deliver. On June 8, 1994, he filed a motion to suppress the drugs and currency discovered during the search at the airport. He argued that the law enforcement officers had not had a reasonable suspicion to detain him under the Aguilar-Spinelli principles set forth in State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989). The trial court denied the motion to suppress, ruling that the discovery of the drugs and currency occurred pursuant to a lawful consent search.

Carlos L. Acevedo, 01C01-9602-CR-00061.

3

The petitioner cites the unpublished case of State v. Norman L. Wilson, No. 01C01-9207-CR-00219, Davidson County (Tenn. Crim. App. filed October 14, 1993, at Nashville), in his issue statement, apparently relying upon Wilson as authority for his proposition that the trial court's denial of his motion to suppress should be reversed. In Wilson, the defendant was stopped in an airport by a police officer acting upon information received from a telephone dispatcher. The defendant was asked to produce his plane ticket, but he did not. When asked to consent to a search, he agreed, and a controlled substance was found in his pocket. A panel of this Court decided that because "neither the informant's reliability nor his/her basis for knowledge was sufficiently demonstrated," the police were not justified in seizing the defendant. To use the Wilson court's terminology, the initial encounter between the defendant and the police was tainted. The Wilson court further determined that since the initial encounter between the defendant and the police was tainted, the defendant's purported consent to be searched was irrelevant. Thus, the Wilson court's decision to affirm the trial court's suppression of evidence turned on whether the State had established the reliability of the informant and his or her basis for knowledge in accordance with Aguilar v. Texas, 378 U.S. 108 (1964), Spinelli v. United States, 393 U.S. 410 (1969), and State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989)(adopting the Aguilar-Spinelli requirements in Tennessee).

In the instant case, the petitioner does not challenge the reliability or the basis of the information given to Officer Buck and the other police officers. Thus, the petitioner's reliance on Wilson is misplaced.

The petitioner argues that his consent to be searched was not voluntarily given because it resulted from "official intimidation or harassment." The petitioner claims he was "coerced" and "intimidated into submission" because four police officers

4

approached him, identified themselves, and "surrounded" him in a bathroom while they searched him. According to the petitioner, the officers retained his plane ticket throughout the interview and search, even though his plane was "ready to fly." He characterizes his encounter with the police officers as one in which "any attempt to decline the search was wasted effort" and for this reason, contends that the consent search was not valid.

The record does not support the petitioner's version of the facts. According to the record, Officer Buck and the other officers approached the petitioner, identified themselves, and asked if they could speak with him. After discussing several "preliminary matters," they asked the petitioner if he would consent to a search. The petitioner said yes. The officers then asked him if he would prefer to conduct the search in the bathroom for privacy's sake. Again, the petitioner agreed. According to the record, only two officers accompanied the petitioner into the bathroom where he was searched, so contrary to the petitioner's assertion, he was not "surrounded" by "several officers" when he was searched. Moreover, while the record indicates that at some point (the record does not specify when) the police officers asked to look at the petitioner's plane ticket, there is no indication that the officers retained the plane ticket. There is also no evidence that the interview and initial search of the petitioner detained him while his flight was boarding.

Given these circumstances delineated and uncontroverted in the record, nothing supports the petitioner's conclusion that his consent was obtained by coercion. Rather, the record reveals a consensual encounter between police officers and the petitioner, and even though the petitioner was not obliged to even talk to the officers, let alone consent to the search, see Florida v. Royer, 460 U.S. 491, 497-98 (1983), he did

5

so voluntarily. Because a seizure does not occur---and thus, the Fourth Amendment is not implicated---by a police officer merely talking to or questioning an individual in a public place, the petitioner's argument must fail. See Royer, 460 U.S. at 497; State v. Moore, 776 S.W.2d 933, 938 (Tenn. 1989).

We recognize that there is an interesting twist to the facts in the instant case. Although the record shows that the petitioner validly consented to the search when asked, it is not so clear whether the petitioner's act in fleeing from the officers after the search had already commenced somehow vitiated the consent given. Unfortunately, neither party addresses this issue. In fact, it is questionable that the record, sparse as it is, would even support such an argument. The record reflects that once the petitioner fled, the police officers chased him, wrestled him to the ground, and somehow subsequently discovered drugs in his socks, but it is unclear whether the police officers discovered the drugs by continuing their search or whether they discovered it because the petitioner removed his socks in an attempt to abandon the contraband.[1] At any rate, since the petitioner does not argue that he withdrew consent and rightfully terminated the search once he fled from the bathroom, and that the officers did not have either articulable suspicion or probable cause to further detain or arrest him---let alone cite cases for this argument---we deem any argument in this vein to be waived. Rule of the Court of Criminal Appeals of Tennessee 10(b).

The petitioner also briefly proposes that the search "should have ended after a 'Terry Tap' revealed no reason to continue or expand the search." Because the

_____

[1] When describing his struggle with the petitioner after chasing him, Officer Buck testified, "But he continued to struggle, until he got a sock off; and then he -- apparently -- I didn't see him sling the sock but, apparently, he -- . . . ." At this point, Officer Buck's testimony was interrupted by a defense objection because Officer Buck was beginning to "testify to something he has no personal knowledge of." Before the trial judge could rule, the prosecutor voluntarily abandoned this line of questioning, but it was never established, either by the State or the defense, exactly how the drugs were discovered in the petitioner's socks.

petitioner does not direct any argument or citations to authority on this point, it too is deemed waived.  Rule of the Court of Criminal Appeals of Tennessee 10(b).

The trial court's order denying the petitioner's motion to suppress is affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
NORMA McGEE OGLE, Judge